Statement of the Case.
MONROE, J.
Plaintiffs sue for the partition of four improved lots of ground in this city, which they allege they own in common with their aunt and sister, Julia Steele Chapman, wife, etc., having inherited them from their grandfather and father, Shedrick Chapman. Defendant alleges that she acquired said lots by purchase and dation en paiement from her father, Shedrick Chapman, and has been in possession since her acquisition. She alleges the nullity of a certain judgment, of date April 30, 1909, rendered in the matter of Shedrick Chapman v. Julia Steele Isles and Husband, on the grounds that plaintiff therein was mentally incapable of standing in judgment; that she and Anne Chapman Brown, who was a party thereto, were unauthorized by their husbands; and that said judgment was nothing more than an agreement, establishing a fidei commissum, prohibited by law. She further alleges the nullity of a judgment, of date February 23, 1910, under which plaintiffs claim to have been sent into possession of their interests in the property in question, on the grounds that she and her husband (to aid her) did not authorize the suit, and were not before the court, and that Anne Chapman Brown, one of the parties plaintiff, was not authorized by her husband. She prays that said judgments be decreed null, and that she be quieted in her possession of the property.
We find from the evidence that Shedrick Chapman, a man of color, whose wife died in 1S87, had four children, issue of his marriage, viz.: Nellie, who married and died, leaving plaintiff Ethel Priestly as her sole heir; Frederick (or Alfred) Doüque, who *483 died, unmarried and intestate; Anne, plaintiff herein, who married Sterling Brown; and Julia Steele, defendant herein, who married George Isles, and, after his death, Samuel J. Brown. Three of the lots in question were acquired by Ohapman during the existence of the community; the fourth was acquired in the name of the wife. He was put in possession of her estate as universal legatee, and no complaint appears to have been made. On January 14, 1903, defendant renounced her interest in her mother’s succession, and on the same day Chapman executed an act, purporting to sell her one of the lots in question for $1,800 cash. On October 13, 1905, he executed another act, purporting to give her the other three lots in payment of debts amounting to over $5,000. In March, 1907, Chapman made a will (revoking several previous wills), declaring that he never owed defendant the debts thus mentioned, or any other, and leaving his property to his two daughters and granddaughter, share and share alike; and in April following he instituted suit for the recovery of the property, alleging that it had been conveyed to defendant wholly without consideration— he having owed her nothing, and she having paid him nothing, but having for years controlled his revenue and been maintained by him. To the suit so brought, defendant excepted and answered, aided and authorized by her then husband, George Isles. Later in the year, his mental condition rendered it necessary that Chapman should be interdicted, and in January, 1908, the Canal Louisiana Bank & Trust Company was appointed curator, and in February, 1909, it caused the sequestration of the property claimed in the then pending suit, and about the same time it was ordered, on motion of plaintiffs’ attorney, that Samuel J. Brown be made party defendant with his wife, though it does not appear that the order was served on Brown. A few days later, however, on motion of defendant’s attorney, it was-
“ordered by tbe court that Mrs. Julia Isles Brown, herein duly authorized and assisted by her husband, Samuel J. Brown, the defendant herein, be and she is hereby permitted to bond the property herein sequestered, upon her furnishing bond, with good and solvent surety, and conditioned as the law requires, in the sum of $1,000.”
And defendant furnished the bond, with one of her attorneys as surety, bearing her own signature and that of her husband, to authorize her.
On April 29, 1909, all the parties .in interest — that is to say, the plaintiff in the suit, through his attorney and his under curator, the two parties plaintiff in the present suit, and the defendant, aided and authorized by her husband — met in the court and entered into an agreement and compromise to the following effect, to wit: That the property in dispute should be placed and registered in the joint names of the plaintiffs’ and defendant’s attorneys, as trustees for all of the parties, to be so held during the life of the interdict, and at his death divided equally between his two daughters and granddaughter; that the interdict should live with either of his daughters, as lie preferred; that defendant’s counsel should collect the revenues of the property, and turn over to plaintiffs’ counsel $40 per month for plaintiffs’ maintenance, and, after paying the cost of maintaining the property, turn over the balance to defendant; and that all claims by defendant against the interdict for money alleged to have been advanced or loaned, or upon any other account; should be held extinguished. The agreement so made was dictated, in open court, in the presence and with the consent of all parties, to the court stenographer, and on the following day was entered as the judgment of the court. We have said that defendant was aided and authorized by her husband. The facts in that connection are that the husband is a negro with a bad criminal record, who is likely to be drunk and make himself obnoxious, and the counsel representing his wife and himself, one of *485 whom had defended him on occasions in criminal prosecutions, thought it advisable that he should remain outside the courtroom, lest he create some disturbance. He was, however, just outside the door, in the corridor; and his wife and their counsel went out there and consulted him during the progress of the discussion which led to the agreement, advised him of all that was proposed, and obtained his concurrence in all that was done. And the agreement and judgment so made and entered were executed and lived up to until after the death of the interdict, which took place on February 8, 1910, when (that is to say, on February 23, 1910) a petition was filed in the civil district court, in the names of the defendant and of the two plaintiffs herein, alleging the death of the interdict, and further as follows:
“That petitioners Julia Steele Chapman and Anne Chapman Brown are his daughters, and that Ethel N. Priestly is his granddaughter; * * * that * * * they are his sole and only heirs, and entitled to inherit, in the proportion of one-third each, the property left by the said Shedrick Chapman; that the said Shedrick Chapman, at the time of his death, was the owner of the following described property, to wit: [And then follows a description of the property here in dispute, after which, the petition proceeds:] Wherefore, the premises considered, petitioners pray that they be recognized as the sole and only heirs of the said Shedrick Chapman, and as such be sent into possession of his entire estate, and especially of the following described property, to wit: [And then follows another description of the property.]”
The petition in question was prepared and signed by counsel representing the plaintiffs now before the court, who sent it to the counsel representing the defendant, by whom it was submitted and explained to, and discussed with, defendant and her husband; and they authorized the counsel to sign and file it on behalf of defendant, which being done judgment was at once rendered as prayed for. On the following day (February 24, 1910), defendant wrote and caused to be delivered, by hand, to her sister (plaintiff herein) a note, reading as follows:
“Dear Sister: I write you I want you to come Saturday morning (home). I have rote for Ethel. We are the only three that represent the Chapman family and it takes of three to have the family’s meeting. Ethel represent Nellie. She is of age. Then thing will proceede on.
Your sister, [Signed] Julia.”
On March 7th following, plaintiffs brought this suit,, in order to effect a partition of the property, and thereafter, on March 9th, without appearing or answering herein (possibly not having been cited), defendant in-' stituted a suit to annul the agreement and judgment of April 29, 30, 1909, as, also, the judgment of February 23, 1910, and to quiet her in the possession of the property in dispute; the grounds of action set up being about the same as are here relied on. To the suit thus instituted, plaintiffs herein answered on March 18th, and, on June 22d, the case, being called for trial and no one appearing to represent plaintiff, was dismissed as of nonsuit: On February 1, 1911, counsel for plaintiffs addressed a letter to a firm of real estate agents and auctioneers, directing them to sell the property in controversy at public auction, after 10 days advertisement, which letter, after having been signed by him and by plaintiffs, was sent to the office of defendant’s attorneys for their consideration and the consideration of defendant, and defendant’s attorneys submitted the letter to defendant and her husband together, and advised with them as to the course to be pursued (the only matter at all discussed being whether it would be better to sell the property at public or private sale, it being understood that the counsel would bid in one of the properties as a home for defendant, and, if the price exceeded her share, would lend her the money to make up the difference); the result being that the letter was signed by defendant and by her husband, to authorize her, and by her attorneys, and *487 returned to plaintiffs’ attorney. On February 9, 1911, there was judgment herein in the district court in favor of plaintiffs, from which defendant prosecutes this appeal.
Opinion.
It is undisputed that defendant was aided and authorized, for the purposes of the suit in which the agreement and judgment of April 29, 30, 1909, was made and rendered, by her then husband, George Isles, and the. evidence shows that she was subsequently so aided and authorized by her second hus- ■ band, Brown, though it has been held that the authorization of the second husband, under such circumstances, is unnecessary. Favaron v. Rideau, 14 La. Ann. 805. Being properly before the court as a defendant—
“she had a right, in such litigation, to defend herself. She had also a right to enter into such arrangements as her interests might require, provided they were contracted in good faith and for her own advantage. * * * Whether she gave her written consent to the judgment which was rendered by the court is not material; it may have been [and in this case was] given verbally and in open court.” Woodward v. Lurty, 11 La. Ann. 281, 282.
[1-4] As between the parties who were properly represented, the consent judgment was as binding as though it had been rendered after contest, and the case was not even appealable. Skinner v. Dameron, 5 Rob. 447; Marbury & Crosby v. Pace, 29 La. Ann. 557; Thornhill v. Bank, 34 La. Ann. 1171. And, the agreement and judgment having been fully executed until after the death of the interdict, it is too late for the defendant, who has received the consideration, to raise the objections that the interdict was not properly represented, and that the arrangements as to the property, which Terminated with his death, were unauthorized or prohibited by law. Moreover, defendant is concluded by the judgment, rendered at the instance of counsel employed by her 'and her husband, acting together, whereby she and the plaintiffs were put in possession of the property in dispute, share and share alike.
[5] It is said that the plaintiff Mrs. Anne Chapman Brown was not authorized by her husband, but that does not weaken the force of defendant’s own judicial admissions; and. as Mrs. Anne Chapman Brown’s husband has formally ratified all that she has done or may do in the premises, the fact that she was not originally authorized by him affords no just cause of complaint, the more especially as the transactions concerned his wife’s paraphernal property and involved no alienations. Dickerman v. Reagan, 2 La. Ann. 440; Roberts v. Wilkinson, 5 La. Ann. 369; Michel v. Knox, 34 La. Ann. 402; In re Sheehy, 119 La. 608, 44 South. 315.
For the reasons thus given, the judgment appealed from is affirmed.